UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE P.,[1] | ) |
| | ) No. 21 CV 1871 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) April 22, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Michelle P. seeks supplemental security income ("SSI") asserting that she is disabled by depression, anxiety, and panic disorder, and chronic fatigue. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her disability application. For the following reasons, Michelle's request for remand is granted:

**Procedural History**

Michelle filed an SSI application on April 17, 2019, alleging disability beginning on the same day. (Administrative Record ("A.R.") 21.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 21, 64-74, 76-85.) Michelle, with her attorney, participated in a telephonic hearing in October 2020, (id. at 21, 40-63), and the presiding Administrative Law Judge ("ALJ") issued a decision the following month denying her SSI claim, (id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Michelle's first name and last initial in this opinion to protect her privacy to the extent possible.

21-35). Michelle requested review, but the Appeals Council denied the request, (id. at 1-8), making the ALJ's November 2020 decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Michelle then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Analysis

Michelle argues that remand is required because the ALJ improperly evaluated medical opinion evidence and failed to account for her moderate limitations in interacting with others, maintaining concentration, persistence, and pace ("CPP"), and adapting to changes when developing her residual functional capacity ("RFC") and posing hypothetical questions to the vocational expert. (R. 17, Pl.'s Br. at 4-16.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must

say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that remand is warranted.

**A.    Opinion Evaluation**

Michelle argues that the ALJ improperly evaluated the state agency psychological consultants' ("consultants") and Michelle's treating psychologist's opinions.  (R. 17, Pl.'s Br. at 4-13.)  Under applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency.  *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).  The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources.  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).  After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant,

3

specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

When developing Michelle's RFC, the ALJ relied on the consultants' opinions—based on a record review—that she suffers from bipolar I disorder, generalized anxiety disorder, and panic disorder, (A.R. 72, 80), resulting in moderate limitations in interacting with others, maintaining CPP, and adapting to changes, (id. at 70-71, 82-83). The consultants endorsed moderate limitations in Michelle's ability to: "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and [] perform at a consistent pace without an unreasonable number and length of rest periods"; and "respond appropriately to changes in work setting." (Id. at 71, 82-83.) They assessed Michelle as having the following RFC:

> [she] can understand, remember, and carry out detailed, but not complex tasks. [She] can relate on a superficial and ongoing basis with co-workers and supervisors. [She] can attend to tasks for a sufficient period of time to complete tasks. [She] can manage the stresses involved with detailed work-related tasks.
>
> It appears that [she] would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded. [She] would appear to work best alone, in semi-isolation from others or as part of a small group . . . . [She] seems to be able to maintain at least a minimal level of relationship with others.

(Id. at 72, 83-84.)

The ALJ deemed these opinions "persuasive" because they are "supported by and consistent with the record." (Id. at 26, 31.) She explained that the record reflects Michelle's diagnosis of bipolar disorder, which "causes her to experience mood swings which include periods of mania and depression, irritability and aggressive behavior." (Id. at 31.) Nonetheless, the ALJ found that "updated medical records" show that after starting additional medication, Michelle had the RFC to:

> understand, remember and carry out simple and detailed tasks but not complex tasks, can deal with occasional changes in work processes and environment on jobs that involve no production rate pace work or tandem tasks but can perform end of day goals and must avoid all contact with the general public and occasional interaction with coworkers and supervisors.

(Id.; see also id. at 23-26, 28, 30-32 (citing id. at 262-65, 267-70, 274-82).)

Michelle asserts that the consultants' opinions are "potentially disabling" and "more restrictive" than the ALJ's RFC. (R. 17, Pl.'s Br. at 4.) She argues that, despite having deemed the opinions "persuasive," the ALJ disregarded "checkbox" limitations set forth in the first section of the opinions without any explanation. (Id. at 5 (citing A.R. 71-72, 82-83).) Michelle also argues that the ALJ did not explain why she departed from the narrative in the third section of both opinions, stating that Michelle likely would best work "alone, in semi-isolation from others or as part of a small group." (Id. (citing id. at 72, 84).) Although the ALJ fashioned an RFC that eliminated all interaction with the public, she permitted Michelle to have "occasional interaction with coworkers and supervisors." (A.R. 31.) Had the ALJ limited her to "semi-isolation," rather than "occasional interaction," Michelle contends that work may have been preclusive, or at least short-lived, given her moderate difficulty

5

"accept[ing] instructions and respond[ing] appropriately to criticism from supervisors" and "get[ting] along with coworkers or peers without distracting them or exhibiting behavioral extremes." (R. 17, Pl.'s Br. at 6 (citing A.R. 28, 31, 72, 84).) Michelle also asserts that her moderate difficulty "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms and [] perform[ing] at a consistent pace without an unreasonable number and length of rest periods" would have adversely affected her "ability to meet work pace, attendance, and on-task expectations." (Id. at 8-9.) In both cases, Michelle says the ALJ failed to address—or explain—the effect these limitations had on her ability to sustain full-time, competitive employment. (Id.)

The government responds that the ALJ did not err by dismissing moderate limitations endorsed by the consultants because the first section of their opinions is "merely a worksheet" designed "to aid" the ALJ in crafting the RFC and does not constitute "the RFC assessment" itself. (R. 21, Govt.'s Resp. at 5 (citing Social Security Administration's Program Operating Manual System ("POMS") DI 24510.060 B.2 (emphasis and internal quotations omitted)).) Social Security rules do not require all function items checked in the first section to be incorporated into the final RFC. (Id. at 5 (citing POMS DI 24510.060 A.1)). The third section, titled "Functional Capacity Assessment," is the "actual" RFC assessed by each consultant. (Id. at 6 (citing POMS DI 24510.060 B.4 (internal quotations omitted)).) And here, the government contends that the ALJ "reasonably translated" the consultants' opinions that Michelle "would appear to work best alone, in semi-isolation from others

6

or as part of a small group" by limiting her to "occasional" interaction with coworkers and supervisors in a job that does not involve "tandem tasks." (Id. at 6.)

The Seventh Circuit has instructed, however, that "even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms." *DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019); *see also Anna-Marie L. v. Kijakazi,* No. 21 CV 50354, 2022 WL 4610120, at *4-5 (N.D. Ill. Sept. 30, 2022) (requiring ALJ to explain reasoning for overlooking limitation set out by state agency physician whose opinion the ALJ found persuasive). But here, the ALJ never explained why she found the consultants' opinions "persuasive," yet declined to incorporate into Michelle's RFC moderate check-box limitations they endorsed, including: "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors" and "get[ting] along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms" and "perform[ing] at a consistent pace without an unreasonable number and length of rest periods"; and "respond[ing] appropriately to changes in work setting." (A.R. 28, 31, 72, 84.) Moreover, the ALJ did not articulate why she departed from the consultants' narrative explanation that Michelle would "work best alone, in semi-isolation from others or as part of a small group," or explain how such language translates to a limitation that Michelle could have "occasional" interaction with coworkers and supervisors in a job that does not involve "tandem tasks." (Id.)

7

Without any explanation as to how this opinion evidence leads to the RFC the ALJ assigned, the court cannot "assess the validity of the agency's ultimate findings and afford [Michelle] meaningful judicial review." *Warnell v. O'Malley*, No. 23-1632, 2024 WL 1503808, at *3 (7th Cir. April 8, 2024) (quotations and citation omitted); *see also Grazyna C. v. Kijakazi*, No. 21 CV 50030, 2022 WL 2802336, at *5-12 (N.D. Ill. July 18, 2022) (reversing where ALJ included some state agency physicians' opined limitations but excluded others without explanation). Accordingly, remand is warranted on this ground.

Remand is not appropriate, however, as to the ALJ's evaluation of Michelle's treating psychiatrist Dr. Talat Ghaus's opinion submitted in August 2020 after treating Michelle for only two to three months. (A.R. 285.) Dr. Ghaus opined that Michelle was "[u]nable to meet competitive standards" for most "mental abilities and aptitudes" required for unskilled, semiskilled, and skilled work and had "[n]o useful ability to function" with respect to "[s]et[ting] realistic goals or mak[ing] plans independently of others," "[d]ealing with stress of semiskilled and skilled work," "[t]ravel[ing] in unfamiliar place[s]," and "[u]s[ing] public transportation." (Id. at 32 (citing id. at 284-89).) The ALJ deemed his opinion "not persuasive" because it was "neither supported by nor consistent with the record, including Dr. Ghaus'[s] own records." (Id.) For support, the ALJ pointed to Dr. Ghaus's treatment notes recording improvement and stability in mood and depression symptoms, positive effects of medication, normal mental status examinations, and ability to care for her mother. (Id. (citing id. at 274 (October 2019 treatment record by Dr. Ghaus noting Michelle's

8

"[m]otor activity was normal," "[e]ye contact was good," "[s]peech was normal high pitched and monotone," "[m]emory was normal for recent and remote events," "[m]ood was 'hectic and happy,'" "[a]ffect was congruent with mood," "[f]low of thought was organized and goal directed," "[c]ontent of thought was negative for auditory or visual hallucinations," "[n]o delusions were reported," "[i]nsight was good," and "[j]udgment was intact"), 282 (August 2020 treatment record noting that although Michelle had "slight psyc[h]omotor slowing," her "[m]ood was 'fulfilled and content,'" "[a]ffect was full range," "[f]low of thought was organized and goal directed," "[c]ontent of thought was negative for auditory or visual hallucinations," "[n]o delusions were reported," "[i]nsight was good," and "[j]udgment was intact").) As such, the ALJ supported her evaluation of Dr. Ghaus's opinion with substantial evidence.

**B.     RFC Assessment**

Michelle contends that the ALJ's improper evaluation of the opinion evidence requires a new RFC assessment. (R. 17, Pl.'s Br. at 4.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Where the ALJ does not rely upon medical opinions, she must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v.*

9

*Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011).

Here, the ALJ evaluated the paragraph B criteria to determine Michelle's mental functioning in work-related terms and found that she has no limitations in understanding, remembering, or applying information or adapting and managing oneself, and moderate limitations in interacting with others and maintaining CPP. (A.R. 26-27.) In explaining her findings as to Michelle's social deficits, the ALJ cited Michelle's testimony that she cannot go to the store alone, does not like meeting new people, experiences irritability and aggression during manic episodes, and has panic attacks daily. (Id. at 27.) The ALJ noted, however, that Michelle's July 2019 function report states that she gets along with "family, friends, neighbors [and] authority figures," and treatment notes reveal happy and stable mood with medication. (Id.) With respect to CPP issues, the ALJ acknowledged Michelle's testimony that her daily panic attacks last 30 minutes and require 30 minutes to recover, she has difficulty with concentration and memory and experiences mood swings and fatigue. (Id.) But treatment records show that her "symptoms were stable on medication," and "she denied having any signs of depression, anxiety or panic attacks," according to the ALJ. (Id.) Furthermore, mental status exams reveal that Michelle "has longitudinally been alert and fully oriented with intact memory, logical and goal oriented though processes and normal intelligence." (Id.) The ALJ concluded that while Michelle has moderate social and CPP limitations, the severity is not sufficient

to satisfy the paragraph B criteria. (Id. at 28.) That said, because the ALJ's evaluation of the consultants' opinions lacks the support of substantial evidence, the ALJ may be required to conduct a new RFC assessment on remand, depending on the opinions she deems persuasive on remand.

## Conclusion

For the foregoing reasons, Michelle's remand request is granted, and the matter is remanded for further proceedings at the administrative level.

**ENTER:**

*[signature]*

**Young B. Kim
United States Magistrate Judge**